IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| WILLIAM DOOLAN,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF REINBECK, IOWA,<br><br>Defendant. | No. C12-0086<br><br>RULING ON MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on the Motion for Summary Judgment (docket number 10) filed by the Plaintiff on November 25, 2013, and the Resistance (docket number 12) filed by the Defendant on December 16. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## I. PROCEDURAL HISTORY

On August 29, 2012, Plaintiff William Doolan filed a complaint against Defendant City of Reinbeck, claiming that Reinbeck failed to reemploy him after his return from military service, in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Reinbeck filed its answer on October 9, denying the material allegations and asserting certain affirmative defenses.

On January 22, 2013, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. In accordance with 28 U.S.C. § 636(c) and the consent of the parties, the case was referred to me for the conduct of all further proceedings. After consulting with counsel, trial was scheduled to begin on April 21, 2014.

On November 25, 2013, Doolan timely filed the instant motion for summary judgment.

## II. RELEVANT FACTS

Plaintiff William Doolan enlisted in the United States Navy in 1984. He remained on active duty until 1988. After that time, Doolan served three years with the Navy Reserves. Doolan then joined the National Guard in 1993. In 2002, Doolan attended Officers Candidate School ("OCS") and was commissioned as an officer in 2003.

In November 2005, Doolan started his employment with the City of Reinbeck ("Reinbeck" or "the City"). Initially, Doolan was employed full time as a telecommunications technician, "taking care of the cable and telephone systems around here and Internet, installing, servicing in the houses." Doolan's employment was reduced to part time (20 hours per week) in June 2009.

While he was employed by Reinbeck, Doolan remained in the Iowa Army National Guard. Recently, however, Doolan obtained a position with the U.S. Army Reserves, holding the rank of captain. Generally, Doolan's service in the National Guard and Reserves required a commitment of one weekend a month and two weeks during the summer.

In 2008, Doolan took command of a company with the National Guard. Accordingly, he went on "active service" for six months. During that time — March to September, 2008 — Doolan did not work at his job with Reinbeck. While the record is somewhat imprecise, Doolan apparently went back on active service for a second period, returning to his job in Reinbeck in April 2009. It was shortly after that time that his employment was reduced to 20 hours per week.

In March 2010, Doolan went on active duty at the National Maintenance Training Center at Camp Dodge in Iowa. Initially, the duty was intended to be for six months, but

it was later extended to one year. When Doolan attempted to return to work with the City in March 2011, he was told that the job was not available to him.

The fighting issue in this case appears to be whether Doolan gave the City advance notice of his intent to report to military service in March 2010. Doolan claims that he told the city administrator, Quentin Mayberry, of his military obligation. Doolan's calendar has a notation on March 16, 2010, stating: "Told Quentin ADOS starts 18 March 10."[1] Another entry on the left side of the calendar for March (under a "notes" heading) reads: "16MAR10 1032 told Quentin that going on ADOS on 18 Mar 10, length unknown."[2]

In his deposition, Mayberry testified that he remembered having a conversation with Scott Cooper — another Reinbeck city employee — within two to four weeks prior to Doolan's departure in March 2010. According to Mayberry, Cooper and Doolan came into his office and Doolan announced he would be leaving. At his deposition, Mayberry testified as follows:

> Q. Tell me everything you remember about the substance of that conversation.
> A. That he had found other employment and he would be leaving. It was very general. Thanks for working, thanks for helpin' us out, good luck in your venture, those type of — that type of conversation.
> Q. And who was talking? Was Mr. Cooper telling you this or Mr. Doolan telling you this?
> A. I think Mr. Cooper.
> Q. Did you ever talk with Bill Doolan about it directly?
> A. I don't recall.

Deposition of Quentin Mayberry, 28:14-25, Doolan Appendix at 15.

---

[1] Doolan Appendix at 32.

[2] *Id.*

3

Elsewhere in his deposition, Mayberry testified that prior to being contacted by Doolan in March of 2011, Mayberry "had no knowledge that his departure was related to military service."[3] Scott Cooper, who was Doolan's immediate supervisor with the City, asserts in an affidavit that he met with Doolan in the last week of February 2010 and Doolan told him that "he was going to resign from his employment, giving his two weeks' notice with the City to accept a fulltime civilian position with the military."[4] Similarly, Jane Blohm, a part-time bookkeeper with the City, testified that shortly before Doolan left, he told her that he was "taking another job."[5] On April 12, 2010, the board of directors of the Reinbeck Telecommunication Utility met and a "[d]iscussion was held on the type of employee needed to replace Doolan who had resigned."[6]

In August 2010, Doolan went back to the City office and applied for a refund of his IPERS benefits.[7] The employer portion of the application was signed by Jane Blohm and dated August 13, 2010. The first page of the application was apparently filled out by Doolan and signed and dated November 11, 2010. On the first page, the applicant is asked "[a]re you planning on returning to covered employment?" Doolan checked "no." On the employer page, the question is asked: "Is this person going on an official leave of absence with you?" Blohm checked "no." Doolan subsequently received a full refund for his IPERS benefits.

---

[3] Mayberry Deposition, 24:18-24 (Reinbeck Appendix at 15).

[4] Affidavit of Scott Cooper at 1, ¶ 4 (Reinbeck Appendix at 20).

[5] Blohm Deposition, 7:4-8:13 (Reinbeck Appendix at 19).

[6] Reinbeck Telecommunication Utility Board Minutes (Reinbeck Appendix at 29).

[7] See Reinbeck Appendix at 10-13.

Sometime prior to March 7, 2011, Doolan called Mayberry and left a voicemail, stating that Doolan intended to return to work. Mayberry admitted in his deposition that he received the voicemail, but did not call Doolan back. According to Mayberry, "I wanted to first find out if I was mistaken when I heard this voicemail. I wanted to verify with everybody that we were all on the same page of what we thought was happening, and then that's when I e-mailed him."[8] On March 7, 2011, Doolan sent Mayberry an email, referencing the "voice message that I left you last week," and stating that his orders would end on March 8, 2011. Doolan stated his intention to return to work for the City on March 9, 2011.[9] Mayberry responded on March 8, indicating that he had "requirements to document every aspect of employment," and asking that Doolan provide him with a copy of his orders.[10] Doolan provided a copy of his orders as requested.

On March 10, 2011, Mayberry sent another email to Doolan, with the subject "re-employment." The email states, in full, as follows:

> I have discussed this with Scott and neither he nor I remember any conversation about orders. My recollection of conversations with you were in regard to the jobs that were open and the distance they were from here. I recall some place like northern Wisconsin and North Dakota. When you left, it was my assumption that you had decided to take a job at one of these places. If you would like to meet with Scott or I, you may want to bring someone with you to verify our conversations. Then, if you want to have the state investigate this situation, this would be your right. I would prefer e-mails in order to have things on paper so there will be no misunderstanding.

---

[8] Mayberry Deposition, 42:15-19 (Doolan Appendix at 17).

[9] Doolan Appendix at 50.

[10] *Id.*

Email from Mayberry to Doolan dated March 10, 2011 (Doolan Appendix at 54).

The office of the Assistant Secretary for Veterans' Employment and Training Service at the United States Department of Labor then investigated Doolan's claim that the City had violated his right to reemployment under USERRA. Investigator Tony Smithhart conducted a telephonic interview of Mayberry on January 17, 2012. In a letter to Mayberry dated January 18, 2012, Smithhart states: "As per our conversation, I have verified that Mr. Doolan did provide you notice that he was leaving his employment for service in the military, performed that service from March 18, 2010 through March 8th 2011 and did make timely application for reemployment."[11] In his deposition, Mayberry acknowledged speaking with Smithhart on about January 17, 2012, but disputed that part of the letter which states that Doolan had informed Mayberry that he was going to be gone for military service.[12]

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes*

---

[11] *Id.* at 74.

[12] Mayberry Deposition 64:19-65:5 (Doolan Appendix at 21-22).

6

*Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## IV. DISCUSSION

The Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301 *et seq.*, is intended to minimize the disruption to the lives of persons performing service in the uniformed services "by providing for the prompt reemployment of such persons upon their completion of such service." § 4301(a)(2). Specifically, "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services" shall be entitled to reemployment if three conditions are met:

> (1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;
> (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and

> (3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

38 U.S.C. § 4312(a).

Here, it is undisputed that Doolan met the second and third requirements. The parties agree that the cumulative length of Doolan's absences from employment at Reinbeck due to his service in the uniformed services does not exceed five years. It is also undisputed that Doolan timely applied for reemployment with the City, as required by section 4312(e)(1)(D). The City contends, however, that Doolan does not have any reemployment rights with the City because he failed to give advance notice of his service, as required by section 4312(a)(1). Reinbeck claims that city officials were told Doolan resigned his employment with the City in order to pursue full-time civilian work.

Doolan asks that the Court find, as a matter of law, that he gave the required notice. The City argues that a genuine dispute exists on this issue. In determining whether there is a genuine dispute regarding the issue of advance notice, the Court views the record in the light most favorable to the City, the nonmoving party, and affords it all reasonable inferences. *Baer Gallery*, 450 F.3d at 820.

The fighting issue appears to be whether Doolan gave the City advance notice of his service in the uniformed services. The notice need not be in writing, 38 U.S.C. § 4312(a)(1), but it must be "reasonably clear." *Hays v. Communication Technologies, Inc.*, 753 F. Supp. 2d 891, 897 (S.D. Iowa 2010). Doolan claims he gave notice to the city administrator and points to his calendar entries as proof. Mayberry flatly denies that he was told Doolan was leaving for military service, and testified that he thought Doolan quit to take a full-time civilian job, possibly with the military. This version of events is supported by the board minutes which said Doolan had resigned. When Doolan left in the past for military service, his duties were covered by Cooper, his supervisor, and by

Mayberry. On this occasion, however, the Utility discussed "the type of employee needed to replace Doolan who had resigned." The City also notes that, unlike his prior active service stints, Doolan cashed out his IPERS and swore in the application that he was not "planning on returning to covered employment."

When viewing the evidence in the light most favorable to the City — as the Court must on Doolan's motion for summary judgment — the Court finds that there is a genuine issue of material fact precluding summary judgment. That is, the Court cannot say, as a matter of law, that Doolan gave the City reasonable advance notice of his intent to leave for uniformed service. Accordingly, the motion for summary judgment will be denied.

## V. ORDER

IT IS THEREFORE ORDERED that the Motion for Summary Judgment (docket number 10) filed by the Plaintiff is **DENIED**.

DATED this 27th day of January, 2014.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA